UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WAYLAND L. WILLIAMS,

                    Plaintiff,          12-CV-6175T

          v.                            **DECISION**
                                        **and ORDER**
MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.
_____

## INTRODUCTION

     Represented by counsel, Wayland Williams ("Williams" or
"Plaintiff") brings this action pursuant to 42 U.S.C. § 1383(c)(3)
and 42 U.S.C. § 405(g) seeking review of a final decision of the
Commissioner of Social Security ("Commissioner"), denying his
application for Supplemental Security Income ("SSI").
Specifically, Plaintiff alleges that the decision of the
Administrative Law Judge ("ALJ") denying his application for
benefits was not supported by substantial evidence and was contrary
to applicable legal standards.

     The Commissioner has moved for judgment on the pleadings
pursuant to Rule 12(c) of the Federal Rules of Civil Procedure
("Rule 12(c)") and 42 U.S.C. 405(g) seeking to affirm the ALJ's
decision on the grounds that it was supported by substantial
evidence and was legally correct. Plaintiff has cross-moved for
judgment on the pleadings seeking to reverse the Commissioner's

decision or, in the alternative, to remand the matter for reconsideration of the evidence.

For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with the applicable legal standards. Accordingly, this Court hereby grants the Commissioner's motion for judgment on the pleadings.

## BACKGROUND

Plaintiff protectively filed an application for SSI on September 14, 2009, initially claiming a disability since March 1, 2008, due to a herniated disc in his back and pain in his neck and fingers. At the time he filed his application, Plaintiff was thirty-one years old and had performed past work as a cleaner, in auto body repair, and in auto sales. Plaintiff's application was denied by the Social Security Administration ("the Administration") on January 15, 2010. On February 22, 2010, Plaintiff filed a written request for a hearing.

Plaintiff appeared for the hearing, with counsel, before ALJ Brian Kane on May 26, 2011. Julie A. Andrews, a vocational expert, testified at the hearing. At the hearing, Plaintiff amended his alleged onset date to March 1, 2009. In a decision dated June 8, 2011, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals

Council denied Plaintiff's request for review on February 10, 2012. On April 5, 2012, Plaintiff filed this action.

## DISCUSSION

## I.  Jurisdiction and Scope of Review

Title 42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits.  This section directs that when considering such a claim, this Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938); see also Moore v. Sec'y of Health and Human Services, 778 F.2d 127, 130 (2d Cir. 1985). Section 405(g) thus limits this Court's scope of review to determining whether the Commissioner's findings were supported by substantial evidence, and whether the Commissioner employed the proper legal standards in evaluating the plaintiff's claim. See Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (stating that a reviewing court does not decide a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d

Cir. 1988). If, after a review of the record, this Court is convinced that Plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. <u>See Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007).

## II. The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.

In his decision, the ALJ adhered to the five-step sequential analysis for evaluating Social Security disability benefits claims, which requires the ALJ to consider the following factors:

(1) whether the claimant is engaged in any substantial gainful work activity;

(2) if not, whether the claimant has a severe impairment that significantly limits his ability to work;

(3) whether the claimant's impairment or combination of impairments meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4; if so, claimant is considered disabled;

(4) if not, the ALJ determines whether the impairment prevents the claimant from performing past relevant work; if the claimant has the residual functional capacity to do his past work, he is not disabled;

(5) even if the claimant's impairment or combination of impairments prevents him from doing past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

<u>See</u> 20 C.F.R. §§ 404.1520 (a) (i)-(iv) and 416.920(a)(4)(i)-(iv).

At Step One of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 14, 2009, his application date. (Transcript of

Administrative Proceedings ("Tr.") at 58). At Step Two, the ALJ found that Plaintiff had the following severe impairments: cervical spine pain status post cervical fusion, lumbar spine disorder, leg pain, and shoulder pain. (Tr. at 58). At Step Three, the ALJ concluded that although severe, the Plaintiff's impairments did not meet or equal, alone or in combination, the criteria listed in Appendix 1, Subpart P of Regulation No. 4. (Tr. at 58). The ALJ noted specifically that he considered listing 1.04 (disorders of the spine) and listing 1.02 (disorders of the leg and arm), but he found that the medical evidence did not support listing-level severity. (Tr. at 58).

At Step Four, the ALJ found that Plaintiff's past work in auto body sales and repair and as a cleaner exceeded the exertional requirements of his residual functional capacity, and therefore, Plaintiff could not perform his past relevant work. (Tr. at 63). The ALJ concluded that Plaintiff, despite his impairments, retained the residual functional capacity to perform sedentary work, except that he would not be able to use his right hand for fingering and handling. Additionally, the ALJ found that Plaintiff should avoid reaching above shoulder level using his right hand, and he can only occasionally reach using his left arm. (Tr. at 58-59).

At Step Five, the ALJ found that, considering Plaintiff's age, education, work experience, and residual functional capacity, a significant number of jobs existed in the national economy that

Plaintiff could perform, such as a surveillance system monitor. (Tr. at 63-64). Accordingly, the ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. at 64).

Based on a review of the entire record, I find that the ALJ properly concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

**A. The ALJ's residual functional capacity finding is supported by substantial evidence in the record.**

Plaintiff claims that the ALJ's residual functional capacity finding is not supported by substantial evidence. After considering the medical evidence in the record and Plaintiff's testimony, the ALJ found that Plaintiff retained the residual functional capacity for sedentary work as defined by 20 C.F.R. 416.967(a). However, the ALJ found that due to his impairments, he should not use his right hand for "fingering and handling," and he "should avoid reaching above shoulder level with his right hand." (Tr. at 59). Additionally, the ALJ found that Plaintiff should only occasionally reach using his left arm. (Tr. at 59). I find that the record provides substantial evidence to support the ALJ's residual functional capacity finding.

Just weeks after an anterior cervical discectomy and fusion in August 2009, Dr. Robert Molinari, Plaintiff's surgeon, noted that Plaintiff reported significant relief compared to prior to surgery, as his arm pain was much improved and his neck pain had subsided.

(Tr. at 325). An examination of Plaintiff showed full and painless range of motion of the cervical spine, and Plaintiff's upper extremities showed intact motor and sensation bilaterally. (Tr. at 325).

Just one month after the surgery, in September 2009, Dr. Stephen Lurie, Plaintiff's treating physician, noted that Plaintiff had full range of motion in his elbows and wrists, and had 5/5 strength throughout. (Tr. at 343).

On September 28, 2009, Plaintiff again stated that his pain and activities of daily living had improved. (Tr. at 339). He was dressing easier, was up and around more with his family, and was sleeping better. (Tr. at 339). In October 2009, Plaintiff responded that he was participating in more family activities and was enjoying working out again. (Tr. at 336).

On November 13, 2009, Dr. Emma Ciafaloni performed electromyographic testing on Plaintiff. (Tr. at 391-93). Dr. Ciafaloni found that Plaintiff was very muscular and strong, and except for his tricep on the right, Plaintiff retained full strength in the upper and lower extremities. (Tr. at 392, 398). Dr. Ciafaloni found that there was no evidence of significant ongoing denervation, and she opined that it was unlikely that Plaintiff's atrophy and weakness would continue to worsen since his cervical disc had been repaired. (Tr. at 393, 399).

On December 22, 2009, Dr. Karl Eurenius performed a consultative examination of Plaintiff. Plaintiff reported to Dr. Eurenius that he was able to shower and dress himself, but still had trouble moving his right arm above his head. (Tr. at 451). Dr. Eurenius noted that Plaintiff had a very powerful and muscular physique. (Tr. at 451). Plaintiff appeared in no acute distress, had a normal gait and stance, could stand on heels and toes without difficulty, could squat fully, did not use an assistive device, and could rise from a chair without difficulty. (Tr. at 451). Dr. Eurenius found that Plaintiff had a full range of motion of the cervical spine, but his right shoulder could not elevate above 110 degrees. (Tr. at 452). Plaintiff had a full range of motion in his left shoulder, lumbar spine, elbows, forearms, and wrists. (Tr. at 452). Additionally, Dr. Eurenius found that Plaintiff had 4/5 strength in right shoulder elevation, right grip, and right elbow flexion, but Plaintiff had 5/5 strength in the remainder of the upper and lower extremities. (Tr. at 452). Plaintiff had normal reflexes, and although he had a slight decrease in sensation to vibration, Plaintiff had no motor deficits in his hands. (Tr. at 452). Dr. Eurenius also found that Plaintiff's hand and finger dexterity was intact. (Tr. at 453). Dr. Eurenius opined that, due to mild weakness and pain, Plaintiff was "moderately" limited in reaching, lifting with his right arm,

and handling objects above his head with his right arm. (Tr. at 453).

On January 12, 2010, Plaintiff returned to Dr. Molinari for a post-surgery follow-up, and Dr. Molinari found that Plaintiff demonstrated a full range of motion in his neck. (Tr. at 492). Additionally, Dr. Molinari noted "clinical evidence of improvement" with respect to Plaintiff's radicular pain symptoms. (Tr. at 492).

On February 1, 2010, Plaintiff saw pain specialist Dr. Angela Mahajan at the University of Rochester Pain Management Center. (Tr. at 481, 607-08). Examination showed that Plaintiff was in no acute distress, but he had diffuse tenderness in his right neck and shoulder. (Tr. at 608). Plaintiff had 4/5 strength in his right arm and 5/5 strength elsewhere. (Tr. at 608). Dr. Mahajan recommended physical therapy and a home exercise regimen, along with continuing with his prescription for Neurontin (Tr. at 481, 608).

On February 17, 2010, Dr. Lurie examined Plaintiff and found that he appeared well, was in no acute distress, and had full range of motion in his right shoulder and arm. (Tr. at 625).

On May 10, 2010, Plaintiff returned to the Pain Management Center. Plaintiff stated that he was going to physical therapy and had no medication side effects. (Tr. at 596). He reported being functional with his daily activities, which included helping his children with their daily homework. (Tr. at 596).

Dr. Lurie examined Plaintiff again, on May 19, 2010. (Tr. at 616, 668). Dr. Lurie noted that Plaintiff was sitting comfortably in his chair, despite endorsing a pain level of 10/10. (Tr. at 668). Dr. Lurie found that Plaintiff showed a normal gait and a full range of motion in the upper extremities. (Tr. at 668).

On June 17, 2010, Plaintiff saw nurse practitioner Laura Carpenter at Highland Family Medicine. (Tr. at 665-66). She noted that Plaintiff had minimal pain with cervical range of motion and had a full range of motion in his shoulders, with pain. (Tr. at 665).

After a number of physical therapy sessions, physical therapist Jeremy Peters noted, on July 12, 2010, that while Plaintiff's alleged symptoms were unchanged, his function and range of motion had improved, and he had made "significant" gains in exercise tolerance and strength. (Tr. at 582-85).

On September 23, 2010, Dr. Annie Philip provided a functional assessment of Plaintiff's physical abilities, see (Tr. at 675-76), and found that Plaintiff had 4/5 strength in his right arm, and finger flexion strength of 3/5. (Tr. at 847).

On November 11, 2010, Plaintiff again saw Dr. Philip. She noted then that Plaintiff had shoulder tenderness, but he retained right arm strength of 4/5 and left arm strength of 5/5. (Tr. at 924).

Following a period of incarceration, <u>see</u> (Tr. at 932, 957-59), Plaintiff returned to the Pain Management Center on April 28, 2011. (Tr. at 925-26). Plaintiff sat comfortably in the chair and was in no acute distress. (Tr. at 925). His cervical spine and paraspinal muscles were not tender, and he had normal range of motion and 5/5 strength for his upper extremities. (Tr. at 925). Plaintiff's sensation was noted as grossly intact, except for decreased sensation to light touch in his right thumb and index finger. (Tr. at 925).

On May 27, 2011, Plaintiff returned to the Pain Management Center. Although examination showed that Plaintiff had tenderness in his cervical spine, right trapezius, right bicep, and right shoulder, Plaintiff retained 3/5 strength in his right arm and 5/5 strength in his left arm and lower extremities. (Tr. at 985).

I find that this evidence supports the finding that Plaintiff retained the residual functional capacity to perform sedentary work with the restrictions as found by the ALJ.

**B.** **The ALJ did not err in evaluating the medical opinions in the record.**

Plaintiff claims that the ALJ's residual functional capacity determination, insofar as it is contrary to the opinions of treating physicians Dr. Lurie and Dr. Philip, is inconsistent with the treating physician rule. This Court is not persuaded by this argument.

An ALJ is generally required to give deference to the medical findings and reports of the physician who has provided primary treatment to the patient. Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003); see also 20 C.F.R. § 404.1527(d)(2). However, where the opinion of the treating physician is not consistent with other substantial evidence in the medical record, the opinion may be given less than controlling weight. Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002). When determining what weight should be given to the treating physician's opinion, the ALJ must evaluate: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998)(citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).

Here, Dr. Lurie and Dr. Philip both opined that Plaintiff was disabled and could do significantly less than sedentary work. See (Tr. at 671-72, 675-76). This Court notes that the separate Physical Residual Functional Capacity Questionnaires as submitted by Dr. Lurie and Dr. Philip were identical copies and both espoused the exact same physical limitations for Plaintiff. See (Tr. at 671-72, 675-76). This included an obvious error in filling out the questionnaire. For Plaintiff's limitations and restrictions in working around machinery or any occupational

environmental hazards, the questionnaire has blanks for five categories: a) unprotected heights, b) being around moving machinery, c) exposure to marked changes in temperature and humidity, d) driving automotive equipment, and e) exposure to dust, fumes, and gases. (Tr. at 671, 675). Both questionnaires as submitted by Dr. Lurie and Dr. Philip mark "total" restrictions for only four of the categories. (Tr. at 671, 675). It is not clear, however, which of the five categories the doctors meant for this "total" restriction to apply. This Court cannot speculate for which of the categories the check marks showing "total" restrictions are supposed to correspond. However, I note that Dr. Lurie and Dr. Philip both have asserted the same major and "total" restrictions corresponding to Plaintiff's work with machinery and occupational environmental hazards.

In both questionnaires, Dr. Lurie and Dr. Philip opine that Plaintiff could never lift or carry up to 5 pounds; that Plaintiff could sit for only up to one half of an hour a day; that Plaintiff could stand or walk for only up to one half of an hour a day; that Plaintiff was not able to grasp, push, pull, or manipulate with either his left or his right hand; that Plaintiff could not use either of his feet in pushing or pulling leg controls; that Plaintiff could never bend, squat, crawl, climb, or reach; that Plaintiff had total restrictions in working around any machinery or any occupational environmental hazards; that pain and medications

will frequently significantly impair and/or preclude performance of even simple work tasks; that Plaintiff would need to relieve pain by lying down for more than six hours in a normal 8-hour workday; that it would be impossible for Plaintiff to function in a work setting; that Plaintiff would have to miss work four or more days per month due to pain; and that Plaintiff was disabled from full-time competitive employment. (Tr. at 671-72, 675-76).

It is unclear that Dr. Philip was a "treating source" at the time that her functional questionnaire was submitted. The only evidence in the record from Dr. Philip prior to the September 23, 2010 functional assessment questionnaire was a February 2010 prescription for physical therapy. (Tr. at 891). Additionally, Dr. Philip only saw Plaintiff one other time after September 23. See (Tr. at 923-24).

Furthermore, Dr. Philip noted in her treatment notes that on September 23, 2010, Plaintiff visited the Pain Management Center for a functional capacity evaluation. Dr. Philip noted, however, that Plaintiff had brought in paperwork for a functional capacity assessment that he had copied from a form that had been signed by Dr. Lurie. (Tr. at 847). Dr. Philip also noted, "[Plaintiff] reported that his lawyer wanted this to be filled out by every physician he was seeing." (Tr. at 847). Dr. Philip then suggested that it would be beneficial in his case for Plaintiff "to go for a formal functional capacity evaluation" and that she would follow-up

with Plaintiff in 4-6 weeks. (Tr. at 847). Plaintiff nonetheless submits the copied Physical Residual Functional Capacity Questionnaire from Dr. Philip as dated September 23, 2010. See (Tr. at 675-76).

Although it is clear that Dr. Lurie's treatment of Plaintiff establishes a sufficient time period to obtain a longitudinal picture of Plaintiff's impairments, see C.F.R. § 416.927(d)(2), there is substantial evidence in the record that is inconsistent with the limitations as set forth by both Dr. Lurie and Dr. Philip. The diagnostic evidence post-surgery, including x-rays of the cervical spine, x-rays of the lumbosacral spine, an MRI of the thoracic spine, and electromyographic testing showed mostly normal findings, <u>see</u> (Tr. at 381-82, 383-84, 454, 490, 574, 599, 927-28, 981), with only slightly abnormal findings of "mild" chronic C7 radiculopathy with no evidence of significant ongoing denervation in November 2009 and "mild" degenerative changes of cervical spondylosis in February 2011. <u>See</u> (Tr. at 392-93, 399, 938).

Additionally, medical examination evidence from Dr. Lurie's colleagues at Highland Family Medicine, from Dr. Philip's colleagues at the Pain Management Center, and from Plaintiff's orthopedic surgeon Dr. Molinari is inconsistent with Plaintiff's extremely restrictive limitations as opined by Dr. Lurie and Dr. Philip. Plaintiff was continually noted as alert and oriented, (Tr. at 319, 348, 366, 586, 588, 634, 665, 925, 985), and in no

acute distress. (Tr. at 366, 392, 596, 608, 634, 665, 925, 978, 981, 985). Plaintiff was noted as having a normal gait, (Tr. at 327, 332, 334, 336, 339, 341, 348, 392, 792, 575, 588, 596, 608, 634, 665, 925, 981), and a very muscular physique. (Tr. at 392, 588). Plaintiff had generally no cervical spine tenderness or only slight tenderness, (Tr. at 316, 363, 369, 372, 588, 623, 691, 925), and generally had a full range of motion for his cervical spine. (Tr. at 325, 327, 332, 334, 336, 339, 492, 588, 623, 634, 665, 901, 981). Although he had pain, Plaintiff generally retained a full range of motion in his right shoulder. (Tr. at 332, 334, 336, 339, 341, 372, 634, 665, 925). He also exhibited full strength in his right upper extremity on numerous evaluations, (Tr. at 316, 325, 341, 370, 392, 634, 665, 925, 981), with other examinations noting that he had 3/5 or 4/5 strength. (Tr. at 327, 332, 334, 336, 364, 492, 575, 590, 605, 608, 901, 985). Plaintiff had full strength in his left arm and lower extremities. (Tr. at 327, 332, 334, 336, 341, 364, 370, 392, 492, 588, 590, 608, 925, 985). Finally, Plaintiff generally exhibited normal sensation, (Tr. at 316, 325, 341, 392, 492, 605, 608, 634, 665, 981), with only some findings of somewhat diminished sensation. (Tr. at 364, 366, 370, 372, 925).

As outlined above, Dr. Karl Eurenius also provided a medical opinion of Plaintiff's physical limitations that was much more consistent with the totality of the medical evidence in the record, as opposed to the physical limitations espoused by Dr. Lurie and

Dr. Philip. <u>See</u> (Tr. at 450-53). Dr. Eurenius opined that due to mild weakness and pain, Plaintiff was moderately limited in reaching and lifting with his right arm and handling objects above his head with his right arm. (Tr. at 453). The ALJ afforded some weight to this opinion. (Tr. at 63).

Moreover, the extremely restrictive limitations as set forth by Dr. Lurie and Dr. Philip are completely unsupported in their own treatment notes. For example, Dr. Lurie regularly noted that Plaintiff was in no acute distress, (Tr. at 343, 614, 625, 648, 667), and appeared well. (Tr. at 625, 648). Additionally, Dr. Lurie noted that Plaintiff was muscular, had 5/5 strength thoughout, and had full range of motion in his right shoulder and arm. (Tr. at 343, 625, 668). In May 2010, Dr. Lurie found that Plaintiff had a normal gait and noted that Plaintiff claimed a pain level of 10/10, but was sitting comfortably in his chair. (Tr. at 668). In September 2010, the same day that Dr. Lurie signed the functional assessment with such restrictive limitations, Dr. Lurie noted that Plaintiff could change from sitting to standing with minimal hesitation and had a gait that was "somewhat antalgic, although less so as he walks down the hall away from the examining room." (Tr. at 614). Additionally, prior to the September 2010 functional assessment, although noting it on the questionnaire, Dr. Lurie made no mention of diffuse, chronic, whole-body pain. (Tr. at 672). Rather, Dr. Lurie had only noted pain related to

Plaintiff's neck, back, and right upper extremity. <u>See</u> (Tr. at 338, 343-44, 616, 621-22, 625, 630, 648, 659, 667-68).

Dr. Philip's treatment notes, although limited, also do not provide any support for the extremely restrictive limitations she opined. On September 23, 2010, the day she signed the functional capacity questionnaire, Dr. Philip noted that Plaintiff was alert and oriented, had 4/5 right arm strength, 3/5 finger flexion strength, and diminished sensation to light touch only in the right C6 distribution. (Tr. at 847). In November 2010, Dr. Philip's examination of Plaintiff showed normal gait, normal posture, limited range of motion in the cervical spine and right shoulder, shoulder tenderness, 4/5 right arm strength, and 5/5 left arm strength. (Tr. at 924).

As to Dr. Lurie's and Dr. Philip's opinion that Plaintiff was "disabled from full-time competitive employment," (Tr. at 672, 676), I find that the ALJ was correct in noting that the ultimate issue of Plaintiff's legal disability is an issue reserved for the Commissioner. (Tr. at 62); <u>see</u> <u>Snell v. Apfel</u>, 177 F.3d 128 (2d Cir. 1999)(finding that whether a claimant is disabled is reserved to the Commissioner); Social Security Ruling 96-5p(stating that the responsibility for deciding whether an individual is disabled under the Social Security Act is reserved to the Commissioner).

The totality of the medical evidence in the record does not support Dr. Lurie's and Dr. Philip's opinions concerning the extent

of Plaintiff's disability.  Therefore, the ALJ correctly gave those opinions less than controlling weight.

**C.**  **The ALJ properly evaluated Plaintiff's credibility.**

Plaintiff asserts that the ALJ erred in his evaluation of Plaintiff's credibility.  The credibility of witnesses, including the claimant, is primarily determined by the ALJ and not the courts.  Carroll v. Secretary of Health and Human Services, 705 F.2d 638, 642 (2d Cir. 1982) (citations omitted).  The Social Security regulations provide that "in determining the credibility of the individual statements, the adjudicator must consider the entire record."  SSR 96-7p.  The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not credible to the extent that they [were] inconsistent with the above residual functional capacity assessment." (Tr. at 62).  Contrary to Plaintiff's allegations, I find that the ALJ's conclusion that Plaintiff's symptoms were not credible to the extent that they were inconsistent with the residual functional capacity finding was correct.

Here, Plaintiff's residual functional capacity was based on all the evidence in the record, which included not only the opinions of the examining and consulting physicians, but also Plaintiff's subjective complaints, treatment history, activities of daily living, and other factors as enumerated at 20 C.F.R.

§ 416.929(c)(3). (Tr. at 59-62). I find that the totality of the evidence in the medical records, as summarized above, does not support the symptoms as alleged by Plaintiff.

Additionally, some of the doctors of record explicitly question Plaintiff's alleged symptoms. In May 2010, Dr. Lurie noted that "despite endorsing a pain level of 10, patient is sitting comfortably in chair." (Tr. at 668). In July 2010, the University of Rochester Pain Management Center encouraged Plaintiff to be as active and productive as possible, continue with physical therapy, and orient his goals to a more productive life, but Plaintiff spent most of the visit "blaming and being upset about the fact that he has not received oxycodone." (Tr. at 586, 588). After this encounter, the Pain Management Center attending physician assessed that Plaintiff was "malingering." (Tr. at 588).

In his decision, the ALJ notes several inconsistencies between Plaintiff's hearing testimony and what is found in the medical record. (Tr. at 62). For example, Plaintiff alleges total disability and trouble lifting even small objects, but numerous examinations found that Plaintiff had a very muscular and strong physique. (Tr. at 62, 343, 392, 451, 588). Plaintiff testified that he has trouble walking because of his pain, but nearly every examination of Plaintiff showed that he had a normal gait. (Tr. at 96-97, 327, 332, 334, 336, 339, 341, 348, 392, 451, 492, 575, 588, 596, 608, 634, 665, 924-25, 981). On one of the two occasions that

Plaintiff's gait was noted as even slightly abnormal, Dr. Lurie noted in September of 2010 that Plaintiff's "gait [was] somewhat antalgic, although less so as he walks down the hall away from the examining room." (Tr. at 614). Although Plaintiff eventually corrected his testimony, the ALJ notes that Plaintiff first testified that he had never applied for public assistance even though he was receiving Medicaid and that he had contacted and applied to the New York State Department of Vocational and Educational Services to Individuals with Disabilities even though no application was on file. (Tr. at 62, 103-106). The ALJ also notes that Plaintiff testified that his surgeon instructed him to stay on bed rest for one year after his cervical surgery and that he complied with those instructions, yet there are no medical records confirming the instruction from his surgeon. (Tr. at 62, 82). Additionally, there are no instances in the record that support Plaintiff's testimony that he did, in fact, stay on bed rest following his surgery. See (Tr. at 82-83).

This Court also notes that Plaintiff testified that his surgeon instructed him to wear a neck brace for a year, but after Plaintiff's surgery on August 5, 2009, the only mention in the record of Plaintiff wearing a cervical collar was on August 21, 2009, just days after his surgery. (Tr. at 82, 346). Furthermore, Plaintiff testified at his hearing that he had not exercised since his onset date in March 2009, but throughout October 2009 (merely

two months after decompressive surgery on his neck), Plaintiff told his doctors on separate occasions that he had been exercising both arms with weights, resistance pulling, and push ups, and that he was enjoying working out again. (Tr. at 97, 334, 336).

As for Plaintiff's treatment post-surgery, the ALJ noted that Plaintiff was prescribed narcotics for his pain, but his physicians seriously questioned his use of the drugs. (Tr. at 60-61, 92-95, 343-44, 586, 621-22, 648, 659). Plaintiff also underwent physical therapy to help with his pain, but he was twice discharged because of his failure to attend appointments. (Tr. at 604, 920). Plaintiff's treatment included physical therapy and home exercise to improve his strength, endurance, pain control, and core stability. <u>See</u> (Tr. at 46). His most recent "rehab" prognosis was "fair." (Tr. at 46).

This Court is compelled to uphold the ALJ's decision discounting a claimant's testimony if the finding is supported by substantial evidence, as it is here. <u>Aponte v. Secretary of Department of Health and Human Services</u>, 728 F.2d 588, 591 (2d Cir. 1984) (citations omitted). Accordingly, based on the above, I find that the totality of the evidence in the record supports the ALJ's assessment of Plaintiff's credibility.

**D. <u>The vocational expert testimony provides substantial evidence to support the ALJ's finding that Plaintiff was not disabled.</u>**

Plaintiff claims that the testimony of the vocational expert cannot provide substantial evidence to support the denial of

benefits because the hypothetical questions posed to the expert were based upon a residual functional capacity that did not accurately and completely describe Plaintiff's limitations.

This Court finds that the hypothetical question posed to the vocational expert accurately reflected Plaintiff's vocational profile and residual functional capacity. As discussed above, in determining Plaintiff's residual functional capacity, the ALJ properly evaluated the entire record and declined to give controlling weight to the treating physicians' medical opinions to the extent that they were inconsistent with the record as a whole. Specifically, the ALJ properly found that the limitations opined by Dr. Lurie and Dr. Philip that Plaintiff could never lift or carry up to 5 pounds; that Plaintiff could sit for only up to one half of an hour a day; that Plaintiff could stand or walk for only up to one half of an hour a day; that Plaintiff was not able to grasp, push, pull, or manipulate with either his left or his right hand; that Plaintiff could never use either of his feet in pushing or pulling leg controls; that Plaintiff could never bend, squat, crawl, climb, or reach; that Plaintiff had total restrictions in working around any machinery or any occupational environmental hazards; that pain and medications will frequently significantly impair and/or preclude performance of even simple work tasks; that Plaintiff would need to relieve pain by lying down for more than six hours in a normal 8-hour workday; that it would be impossible

for Plaintiff to function in a work setting; that Plaintiff would have to miss four or more days per month due to pain; and that Plaintiff was disabled from full-time competitive employment were not supported in the record.

Accordingly, the ALJ did not err in declining to include in his hypothetical these limitations or any other limitations for which he found inadequate record support. See, e.g., Priel v. Astrue No. 10-566-cv, 453 Fed. Appx. 84, 87 (2d Cir. 2011) (finding that the ALJ properly declined to include in his hypothetical question symptoms and limitations suggested by the treating physician that both conflicted with other substantial evidence in the record and were discounted in the residual functional capacity assessment).

Plaintiff also asserts that the ALJ erred in identifying only one occupation that could accommodate Plaintiff's residual functional capacity and vocational background. This Court is not persuaded by this argument.

Plaintiff cites to Kuleszo v. Barnhart, 232 F.Supp.2d 44, 55 (W.D.N.Y. 2002)(Siragusa, J.), to provide support for this argument. In Kuleszo, the Court found that "the existence of only one unskilled sedentary job, i.e. surveillance system monitor, indicates that the full range of sedentary work is significantly eroded." The Court stated that under Social Security Ruling 96-9p, a finding of disabled can apply when the full range of sedentary

work is significantly eroded. Id.  By eliminating those sedentary jobs that actually exceeded that claimant's residual functional capacity, the Court found that the occupational base was so significantly eroded that "there were no jobs existing in significant numbers in the national economy which the claimant could do." Id. at 56.

However, unlike Plaintiff here, the claimant in Kuleszo was suffering from diabetic neuropathy in **both hands**, had definite wasting of the intrinsic muscles of **both hands**, and had early flexion contractures of all the digits in her right hand. Id. at 48-49 (emphasis added).  The claimant in Kuleszo had **no** aptitude for fingering, and could do **no** fine manipulations. Id. at 55 (emphasis added).  Accordingly, the Court's finding that the occupational base was so significantly eroded was based upon a distinction that with those specific limitations, the jobs identified by the vocational expert actually exceeded the claimant's residual functional capacity.  Id. at 55-56.

Here, Plaintiff has a residual functional capacity for sedentary work, except that he cannot use his non-dominant hand for fingering and cannot reach above shoulder level using his non-dominant hand.  I find that these limitations do not erode the full range of sedentary work.  I find that the record here contians substantial evidence that Plaintiff retains the aptitude for fingering and manual dexterity as required by a systems monitor job. See Dictionary of Occupational Titles § 379.367-010, 1991 WL

673244 (surveillance system monitor); <u>Fox v. Comm'r of Soc. Sec.</u>, 6:02-CV-1160, 2009 WL 367628 (N.D.N.Y. Feb. 13, 2009). Therefore, the occupational base is not significantly eroded to the point where there are no jobs that Plaintiff could do that exist in significant numbers in the national economy.

To be found disabled, a claimant must be unable to engage in any kind of gainful employment available nationally or regionally. 42 U.S.C. §§ 423(d)(1)(A); 423(d)(2)(A); 1382c(a)(3)(A); 1382c(a)(3)(B).

Additionally, Social Security Ruling 96-6p provides that the mere inability to perform substantially all sedentary occupations does not equate with a finding of disability. "There may be a number of occupations...that exist in significant numbers, that an individual may still be able to perform even with a sedentary occupational base that has been eroded." SSR 96-6p, 1996 WL 374185, at *3-4.

Here, after hearing testimony from the vocational expert, the ALJ determined that Plaintiff retained the residual functional capacity to be able to perform the duties associated with a job as a surveillance system monitor (Tr. at 63). I find that although the full range of sedentary work was somewhat eroded by Plaintiff's limitations, the listing of only one vocation, that of a surveillance system monitor was sufficient to carry the Commissioner's burden to show that other work existed that Plaintiff could perform, given his residual functional capacity,

age, education, and work experience. See Fox v. Comm'r of Soc. Sec., 2009 WL 367628; Magee v. Astrue, 5:05-CV-413, 2008 WL 4186336 (N.D.N.Y. Sept. 9, 2008); Colon v. Comm'r of Soc. Sec., 6:00-CV-0556, 2004 WL 1144059 (N.D.N.Y. Mar. 22, 2004).

Because the ALJ's residual functional capacity finding was supported by substantial evidence in the record, the hypothetical posed to the vocational expert was complete. Additionally, because the vocational expert's testimony has shown that there exists work in significant numbers in the national economy that Plaintiff could perform, I find that the Commissioner has carried his burden at Step Five. Accordingly, I conclude that the ALJ's finding that Plaintiff was not disabled at Step Five was supported by substantial evidence in the record.

**CONCLUSION**

For the reasons set forth above, I conclude that the ALJ's decision was supported by substantial evidence in the record and, therefore, grant the Commissioner's motion for judgment on the pleadings. This Court denies Plaintiff's motion for judgment on the pleadings and dismisses Plaintiff's Complaint with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca
_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:      March 7, 2013
            Rochester, New York